# Exhibit A



*FILED*

15 OCT -2 PM 4: 12

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

1

2

3

4

5

6

7

8        IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                           COUNTY OF KING
9

10

11

12   ATM SHAFIQUL KHALID, an individual,        **15-2-24309-8 SEA**

                                  Plaintiff,

13

        vs.

14

     CITRIX SYSTEMS, INC., a                     **COMPLAINT FOR DAMAGES**

15   Delaware corporation with

16   branch office in Washington,

17                                Defendant(s).

18

19        COMES NOW the plaintiff, ATM Shafiqul Khalid, and for cause of action against

20   Citrix Systems Inc., ("Citrix" or "Defendant"), states and alleges as follows:

21                        **I.    JURISDICTION**

22

23        1.1    The plaintiff, ATM Shafiqul Khalid   (hereinafter referred to as

24   "Plaintiff" and by his last name "Khalid"), is a citizen of King County, Washington.

25

26

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

1.2     The defendant, Citrix Systems, Inc. (hereinafter referred to as "Citrix" or "Defendant"), is a Delaware corporation doing business in Washington. Citrix has its branch office to conduct business in King County, Washington, where Plaintiff worked for five (5) years.

1.3     This court has jurisdiction over the subject matter and personal jurisdiction over the Defendant pursuant to RCW 4.28.185(1)(a)-(c) and because the Employee Agreement was entered into in Washington state.

1.4     Venue is proper pursuant to RCW 4.12.020, RCW 4.12.025 as most of the events giving rise to the complaint occurred in King County, Washington.

1.5     All the claims rise from a) dispute over written contract with a six (6) year of statuary limitation pursuant to RCW 4.16.040(1), b) violation of Washington Consumer Protection ACT that has a four (4) year statuary limitation pursuant to RCW 19.86.120, and c) property damage that has a three (3) year statuary limitation pursuant to RCW 4.16.080(2).

## II.     FACTS

### A. Background

2.1     Citrix Systems, Inc., Citrix, is an American multinational software company founded in 1989 as  a Delaware Corporation. Citrix provides software and networking solutions for enterprise customers. Citrix has headquarter in Fort Lauderdale, Florida and has a branch office in Redmond, Washington. In 2014, Citrix had $3.1 billion in revenue and approximately 10,000 employees.

COMPLAINT
KHALID v CITRIX
Page 2 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.2     Plaintiff is a very creative engineer and serial inventor. Plaintiff had been named inventor on seventeen (17) patents issued by United States Patent and Trademark Office ("USPTO") and European patent office. Plaintiff always had his own creative projects in various areas to exercise his intellectual creativity. Plaintiff is an expert in the area of computer software, operating systems, cloud and virtualization with 20+ years of experience.

2.3     Prior to being employed by Citrix, Plaintiff wrote critical software components that had been deployed in over one billion systems, and Plaintiff gained significant expertise in software virtualization, hypervisor systems, software and digital content subscription and software security. Plaintiff had published fourteen (14) research papers in journals and conference proceedings.

2.4     Plaintiff worked for Citrix from September 18, 2006 until October 3, 2011 at Citrix regional office in Redmond, Washington. Plaintiff had been a Washington resident since 1998.

2.5     On August 14, 2006, Citrix made a job offer to Plaintiff to work in their Redmond, Washington, office as Sr. Software Developer with a compensation package of $155K/Year. The offer was contingent on signing a Citrix System Confidentiality and Employee Non-Disclosure Agreement ("Employee Agreement").

2.6     Citrix Employee Agreement contained a section titled "Disclosure and Assignment of Patent" which stated:

> "If at any time during the term of my employment by Citrix, I (either alone or with others) make, conceive, discover or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

how, secret, or intellectual property right whatsoever or any interest therein (whether or not patentable or registrable under copyright or similar statues or subject to analogous protection) (hereinafter called "Developments") that (i) relate to the business of Citrix or any of the products or service being developed manufactured or sold by Citrix, or which may be used in relation therewith; (ii) result, directly or indirectly, from tasks, duties and/or responsibilities assigned to me by Citrix; or (iii) result, directly or indirectly, from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by Citrix, such Development and the benefits thereof shall be considered work made for hire and shall immediately become the sole and absolute property of Citrix and its assigns. ..."

2.7   Employee Agreement did not include notice under RCW 49.44.140(3). Only after termination from Citrix in 2011, Plaintiff became aware of the existence of employees' right to their invention  provided by RCW 49.44.140 as a matter of public policy.

2.8   Disclosure and Assignment of Patent section in Employee Agreement assigned to Citrix any employee invention that  "(i) relate to the business of Citrix"; that definition covers any employee invention that either "relate (directly) to the business of Citrix" or "relate (indirectly) to the business of Citrix".

2.9   Disclosure and Assignment of Patent section in Employee Agreement did not use the word "directly" in phrase (i) "relate to the business" as required by RCW 49.44.140(1). By Citrix omission of the word "directly", the section became overbroad and violated public policy of this state under RCW 49.44.140(1).

2.10  Disclosure and Assignment of Patent section in Employee Agreement assigned to Citrix any employee invention which might be used in relation with any product sold by Citrix. The section did not define what constitutes "used in relation" and

COMPLAINT
KHALID v CITRIX
Page 4 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

made the section overbroad and violated public policy of this state under RCW

49.44.140(1).

2.11   On Sept. 11, 2006, after some negotiation, Plaintiff sent a modified

Employee Agreement to Citrix for review. Plaintiff's modifications to the Employee

Agreement listed several patentable items in "Exhibit B Schedule of separate work"

("Exhibit-B") under the Employee Agreement with additional text in Section 5 of the

Employee Agreement that's purpose was to allow Plaintiff to continue/finish his patent

work. "Exhibit-B" included 18 items to be excluded from Employment Agreement that

included items "7. Safe and secure program execution framework", "8. A home

communication GateWay to combine different consumer needs like cell phone movie

rental, internet services", and "9. A method and system to support subscription based

software service".

2.12   Items 7 and 9 in Plaintiff's Exhibit-B to the modified Employee

Agreement were repeated in items 16 and 17 under separate subsection that stated those

two items had been part of patent application, meaning a lot of documentation of those

items had been disclosed for patenting process.

2.13   On Sept. 11, 2006, Plaintiff also emailed Citrix hiring manager:

> "Attached document contains filled up 'Exhibit B' section and additional one
> sentence in section 5. I[Plaintiff] want to make sure if anything goes wrong
> I[Plaintiff] can go back to Microsoft or Microsoft related areas where I've
> developed my expertise in the last 10 years. Also few of my[Plaintiff's] work has
> been part of patent and patenting are long process; modification, continuation
> over time, re-filing is pretty normal."

"Non-Competition" section of the Employee Agreement   Plaintiff proposed had the
following addition:

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

"This covenant not to compete is not applicable for working for Microsoft corp. or any company that develops the similar product Microsoft has developed or continuation work of the items listed in Exhibit B"

2.14   During the offer negotiation in the week of Sept. 11, 2011, Plaintiff had specific discussion with Citrix hiring manager around disclosure of his patent work with regard to Citrix Employee Agreement. Plaintiff asked the hiring manager on the phone, "I've added just the title of patents that are self-descriptive of what it does, do I need to add more?"  The hiring manager replied that if Citrix needs more information, Citrix will contact me [Plaintiff].

2.15   On September 18, 2006, Plaintiff signed Citrix Employee Agreement at Citrix office in Redmond, Washington, without any objection from Citrix. Citrix Chief Financial Officer, David J. Henshall, signed the agreement on behalf of Citrix. Signed Employee Agreement included all changes discussed during offer negotiation.

2.16   After Termination of Khalid Employment on Oct. 3, 2011, Citrix claimed benefit of items listed on Exhibit-B in the form of continuation and improvement work along with Plaintiff's start-up work.

B. **Xencare Software  and 8,286,219 Patent**

2.17   In 2005, Plaintiff, while working with his friends and partner, made an invention to protect computer system from virus and spyware. Plaintiff filed a patent application in 2005 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK". The application expired in 2006. Plaintiff added the title of the

COMPLAINT
KHALID v CITRIX
Page 6 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

application in Exhibit-B of Employee Agreement in two different sections clearly identifying that the item had been subject of patent application.

   2.18   On Feb. 17, 2008, Plaintiff purchased an internet domain xencare.com and formally launched "Xencare Software" ("Xencare") and got a license from Washington state on July 17, 2008. A few of Plaintiff's friends and family members invested in Xencare Software. Plaintiff was employed as the Chief Technology Officer (CTO) of Xencare Software. Plaintiff launched Xencare Softlock beta products in April of 2008 and released a final product on Sept. 2, 2008 with a press release listing Plaintiff as CTO of "Xencare Software".

   2.19   On February 16, 2008, after months of efforts to commercialize the subject matter of the expired patent application on security, after some validation and improvement with "single system framework", Plaintiff startup team refiled the 2005 patent application titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK" with application number 12/032,663. The application included improvement.

   2.20   On October 9, 2012 US patent office issued Patent 8,286,219 ("the '219' Patent") for the application number 12/032,663.

   2.21   Citrix doesn't practice the '219' patent and the patent is not directly related to any Citrix business or products. Citrix claimed ownership of the '219' patent by claiming patent application 12/032,663 after terminating Plaintiff in 2011 without offering any consideration to cover Plaintiff startup R&D expense.

COMPLAINT
KHALID v CITRIX
Page 7 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.22  On March 3rd, 2008, to cover additional work, Plaintiff filed two additional patent application Ser. No. 61/033,018 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK WITH GUEST APPLICATION SPACE" and patent application Ser. No. 61/033,017 titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK WITH DATA AND PROGRAM FILES PROTECTION".

2.23  In 2008 Xencare team also created a prototype for "digital content subscriptions" to enable a user to subscribe software and digital content.

2.24  On December 30, 2011, Plaintiff incorporated "Xencare Software Inc." in Washington to continue Xencare business. Up through 2012, Plaintiff and his team invested $1.5 million in the form of cash and sweat equity. Plaintiff sold a few "Xencare Software Inc." company stock to initial investors at $1.5 million valuation.

2.25  During the years of 2007 through 2009, Plaintiff disclosed his start-up efforts to his Citrix director. Plaintiff ran two formal demo sessions with this Citrix director, one in 2008 and one in 2009 that demonstrated Xencare products including its pending patent capability in the area of software security and services under development in Xencare Software.

2.26  Xencare products and patents were related to anti-virus, anti-malware software based on whitelisting. Xencare had two physical office locations, one in the United States, and one in Dhaka Bangladesh; Xencare had approximately 10 employees. In 2009 McAfee bought a startup "Solidcore Systems" for $47 million that used to build similar products Xencare was building.

COMPLAINT
KHALID v CITRIX
Page 8 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.27   Plaintiff sought some help from Citrix in the form of investment, and Citrix decided not to participate. In 2008, Citrix responded verbally, "It is not related to Citrix line of business".

2.28   On March 2, 2009, Plaintiff filed a patent application titled "SAFE AND SECURE PROGRAM EXECUTION FRAMEWORK WITH GUEST APPLICATION SPACE" with application number 12/396455 to cover Xencare work.

2.29   On June 14, 2011, Plaintiff wrote email to three (3) vice president level people at Citrix that included:

> "...Disclosure: I've personal investment in a security company[XenCare] which is not in competition with Citrix and I did good amount of digging in security space, I'll use some tools and ideas from XenCare to build and demonstrate the VDI security model. XenCare has few pending patents on zero knowledge based protection and considering another one in virtual environment."

before a presentation on a model for virtual desktop using Xencare tools. Citrix did not invest in Plaintiff's proposal.

2.30   In 2012, Plaintiff's Xencare start-up team filed two more patent applications as an improvement, continuation and related to the 219 patent and ongoing work to protect computer systems from virus, malware and spyware.

2.31   In March of 2012, Citrix asked Plaintiff to transfer the 219 patent and three (3) related patents to Citrix. Citrix withheld Plaintiff's severance money when Plaintiff refused to transfer his start-up patent asset to Citrix. Citrix's interference with the Xencare patents blocked Plaintiff from raising funds for Xencare and resulted in

COMPLAINT
KHALID v CITRIX
Page 9 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

abandonment of all patent applications except 219 patent. Xencare business died as well as a result of Citrix interference.

## C. **Pcxen Systems and 8,782,637 Patent**

**2.32**   Before joining Citrix, Plaintiff received a request from his partner to build a multi-function device that can replace multiple digital endpoints used at residence. Plaintiff thought it could create good business and added an item on Exhibit-B of Employee Agreement with a title containing "A home communication GateWay" to continue exploring that item as separate work from Citrix.

**2.33**   During 2008 and 2009, Plaintiff and his Xencare start-up team worked to combine functionality of "digital content subscriptions" and "home communication GateWay" to incubate another start-up project using Xencare resources in an attempt to build a device suitable for residential user to offer multiple utilities with a new system called  "Home Access Gateway".

**2.34**   By November 2009, Plaintiff and his team had a solid workable idea to combine multiple residential devices into a single device to replace a modem in residential homes with "Home Access Gateway" system that enabled functionality of a desktop computer and DSL modem in a single device.

**2.35**   On November 16, 2009, Plaintiff disclosed the work regarding "Home Access Gateway" system idea to Martin Duursma ("Martin"), VP and CTO office chair at Citrix. Plaintiff also mentioned to Martin that with some additional work the proposed system could be useful for small businesses for desktop scenarios. Martin told Plaintiff that "Home Access Gateway" system is not

COMPLAINT
KHALID v CITRIX
Page 10 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

something that fits with Citrix line of business. However, Martin told Khalid that the device, with cheap terminals, might be interesting for small business. Citrix can fund the product to form a separate company if Plaintiff can prove it would work.

2.36   Martin requested Khalid to make a presentation to his directors on the device's usages for small businesses.

2.37   On November 23, 2009, Plaintiff filed a patent application with Ser. No. 61/263,411 titled "Home Access Gateway to Deliver Virtual Desktop to Home User". The application covered residential usage scenario that Martin declined on November 16, 2009.

2.38   On November 25, 2009, Plaintiff made another presentation to Martin and his team on a modified system covering small business scenarios. Martin asked Plaintiff to continue his development on his own time and expense and told Plaintiff that Citrix can fund when prototype is proved.

2.39   Hearing the possibility of a separate joint venture with Citrix, Plaintiff purchased domain pcxen.com on November 30, 2009, and formed "Pcxen Systems" to build a prototype for the terminal based devices using the resources of Xencare with a goal to spinoff later as a joint venture company with Citrix.

2.40   On January 3, 2010, to cover some progress on terminal related work, Plaintiff filed patent application Ser. No. 61/291,916 titled "Thin Device to Deliver Computing Power" with various setup.

2.41   On January 22, 2010, Plaintiff wrote to Martin that Plaintiff had been actively working on the project on Plaintiff's weekends, nights and vacation.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

Plaintiff wrote to Martin, "As you know for the last few weeks I'm spending my weekend vacations and nights to work on this idea[thin terminal]."

2.42   To make the venture interesting for Citrix, Plaintiff slowed down work on residential user scenarios and Xencare security products to focus on small business scenarios instead. Plaintiff modified the initial proposal with a new product concept "XenDesk" with terminals to be used in small offices.

2.43   Plaintiff's start-up work was presented to at least six (6) people at Citrix. Most of the people at Citrix said that because the project included terminal it wouldn't fit Citrix business. However, Martin told Plaintiff Citrix could help on joint venture through Citrix funding.

2.44   During presentations to Citrix, Plaintiff used Power Point slides that used presentation title with www.pcxen.com with a line "Possible Citrix Company" to capture Citrix joint venture theme. Those presentations made it clear that Citrix didn't own the content. One slide included needed investment of $10 million in the 1st round where Citrix can participate.

2.45   On April 28, 2010, Plaintiff updated Martin with progress that Plaintiff had been working on the prototype; Plaintiff would need some fund to run pilot deployment. Plaintiff emailed Martin "I've accumulated some limited funds for now to cover ongoing expenses, I'll run out of my fund end of this year when either I raise Significant amount of Money or scrap the project. Any chances Citrix might help me with a $1+ token investment[.] That would be big enough to shoot some VC for 10m [$10 million] funding". Martin wrote back, "Stay tuned on the Citrix help. I

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

am in the process of setting up an incubation mechanism [later became Citrix Startup Accelerator] that could be what you are looking for. More details will be coming out in June." Plaintiff also told Martin that some of his friends were helping him.

2.46   In June of 2010, through a presentation to Martin, Plaintiff told Martin that Plaintiff's start-up work would generate 10 patents, four product prototypes; Plaintiff needed to raise funding to finish the Plaintiff's start-up products.

2.47   Through 2010, while building on small business usages to get funding from Citrix, Plaintiff also worked with his startup team to build on residential usages with a hope that residential usages would be valuable in the future even though Citrix didn't like it. Plaintiff presented to Citrix that Plaintiff start-up would commercialize residential usages only after small business usages was commercialized.

2.48   On November 22, 2010, Plaintiff filed a patent application titled "System and method to support subscription based Infrastructure and software as a service" with application number 12/951,081 to cover all start-up work before a demo sessions with Plaintiff's investors and friends. On July 15, 2014, USPTO issued a patent 8,782,637 ("the '637' Patent) on that application with claims covering residential usages scenario with a modified title "Mini-cloud system for enabling user subscription to cloud service in residential environment". The

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

modified title was proposed by USPTO. Citrix declined residential scenario in any form and never showed any interest during various presentation during 2010.

2.49   Citrix doesn't practice the '637' patent and the patent is not directly related to any Citrix business or products. Citrix claimed royalty free license to the '637' patent by claiming royalty free license to application 12/951,081 after terminating Plaintiff in 2011 without offering any consideration to cover Plaintiff startup R&D expense.

2.50   On February 14, 2011, there was a meeting between Martin and Plaintiff on the progress of Plaintiff's start-up efforts. Plaintiff presented power point slides with Plaintiff's product roadmap. The 1st slide contained "www.pcxen.com" to make it clear that the presentation was for start-up.

2.51   Later in February, 2011, there was another meeting with Martin and joined by Bill DeForeest (Citrix Director) to discuss Plaintiff's start-up project and funding from Citrix.

2.52   At the second February 2011 meeting, Marin told Plaintiff that Plaintiff had done enough progress on the prototype and had proved it would work. Martin asked Plaintiff to put together Plaintiff's start-up management team to take the start-up to the next level. Martin also asked Plaintiff to send Martin an email to state that Plaintiff's work was separate work outside Citrix. Martin requested Plaintiff to keep that email as record in case Martin leaves Citrix and some dispute arises in the future.

COMPLAINT
KHALID v CITRIX
Page 14 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.53  On February 18, 2011, in response to Martin's request to keep a

record, Plaintiff wrote an email to Martin and copied it to Plaintiff's manager at

Citrix. The email contained:

> "I just wanted to formally disclose few items I'm working on outside my
> Citrix work to pursue some funding through Citrix start-up accelerator
> program that would fund new ideas up to 400K to create a new business.
> I typically work at night and weekend to engage myself in those activities
> that doesn't affect my Citrix work in any way. Here are the areas I'm
> working on..... Thin terminal, composite devices to combine few
> computing functionalities in consumer H/W like Modem, PC, TV etc – I
> started this project in 2008 as an extension of my earlier project to
> enable rental based computing like sales force. I build some demo using
> open source projects and explored different related areas like some
> devices developed by N-computing and pano logic. This also targets
> many software pieces to make those devices and services practically
> achievable. If needed I can  write separate email on key items which
> potentially might turn into IP as I progress. I showed demo and progress
> to Bill/Martin/BradP at different times in 2009 and 2010 for possible
> sponsorship/funding through Citrix." with email Title "Disclosure of work
> to participate Citrix start-up accelerator".

2.54  Martin requested Plaintiff to talk to Citrix start-up accelerator director

John McIntyre (herein after "John") on term sheet for the Citrix investment. Plaintiff

spoke with John in February of 2011, and got the initial terms and shared those terms

with Plaintiff's prospective investors and gave feedback to John. John wrote to Khalid on

April 10, 2012 "I am anxious to hear feedback on our deal structure [specific term]."

2.55  Martin verbally told Plaintiff in 2010 and in 2011 that Citrix will invest

$400K through Citrix start-up accelerator program at seed round and can invest more in

future rounds. Martin said "Yes" when Plaintiff asked Martin if it was okay to tell his

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

investors that plaintiff was in the process of getting some funds from Citrix. Subsequently, Plaintiff relayed the message to his investors and numerous email communications exist.

      2.56  During various demo sessions at the Citrix site, Plaintiff brought in his own devices and materials; Plaintiff used Citrix conference room and projectors and copied demo video on Citrix internal site to share with remote Citrix Executives to ensure good quality of video stream.

      2.57  Plaintiff had a series of meeting/discussions with Citrix executives during November of 2009 through the summer of 2011 to commercialize products based on Plaintiff's start-up work.

      2.58  In the February and June time frame of 2011, there were power point and live product demo presentations to Abolfazl Sirjani (Citrix director) and Martin Duursma (Citrix VP). In June 2011, online presentations, including live product demo, was demonstrated to Brad Pedersen (Citrix Chief Architect) and Amitabh Sinha (Citrix VP). Several meetings in 2008, 2009, and 2010 occurred; video, pictures, and documents of those presentations exist where Plaintiff fully disclosed his start-up progress to secure funding from Citrix; Citrix always said they would invest but never invested.

      2.59  Plaintiff had two employment terms: one with Citrix, and another one as CTO of Plaintiff's startup at two different shifts, at two different times. Plaintiff had an offshore team that had a different time zone which were mostly in the evening. Plaintiff routinely worked 40-45 hours/weeks for Citrix and another 40-50 hours every week for

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

Plaintiff's start-up projects. Plaintiff spent the majority of his holiday and vacation days for start-up works.

2.60   Citrix didn't complain about Plaintiff start-up terms during the years of 2007 through 2011. Citrix didn't claim those start-up works were directly related to Citrix business. As a CTO of Xencare, Plaintiff signed NDA with other companies, bought all the H/W and S/W; Citrix declined to be a participant in any form. Xencare and Pcxen patents had multiple inventors who worked for Xencare and Pcxen, title to those patents solely owned by shareholders of Plaintiff's start-ups.

2.61   In November 2010, Plaintiff told one ex-Citrix employee that Citrix was funding his start-up. Plaintiff told his investors and his start-up employees that Citrix would fund. Plaintiff got specific terms from Citrix start-up accelerator program director, later Plaintiff shared those terms with his start-up stakeholders. Martin agreed to fund Plaintiff's start-up. Those create the basis of a possible future joint venture between Citrix Systems and Plaintiff's start-up under specific terms negotiated over 12+ months.

## C. Citrix Terminates Khalid in Retaliation

2.62   On October 3, 2011, Citrix terminated Plaintiff in retaliation when Plaintiff made some complaints about products' quality and slow project progress. Citrix showed the termination as mutual promising severance pay, which Citrix never paid to Plaintiff.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.63   Citrix has a written no-retaliation policy which is written in "Citrix code of business conduct" document section of Citrix Employee Handbook. The document along with message from Citrix CEO wrote:

> "This Code of Business Conduct applies equally to each of us, regardless of role or position, and will be enforced fairly and consistently across our company. We are all responsible for complying with laws that apply to us and with Citrix policies (including this Code). You can get answers to questions, seek advice or raise concerns through your manager, your human resources contact, our Legal Compliance Officer and our HelpLine. By reporting concerns that you may have, you are doing the right thing and helping our company quickly address potential problems. Reports will be treated as confidential and there will be no retaliation against anyone who suspects a violation and reports it in good faith."

2.64   Plaintiff was performing well at Citrix and never had any performance issue as backed by Plaintiff performance review history at Citrix. Through September 2011, Plaintiff achieved 100% of his performance goal set by his manager for MBO bonus target for the 3rd quarter in 2011. Plaintiff's average performance was above 90% on a scale of 0-100%.

2.65   Citrix retaliated when Plaintiff raised the issue of product quality concern to his management in good faith after watching competitor product quality in a demo session where competitor product looked better. The retaliation is in violation of Citrix own code of business conduct of no retaliation policy. Also it can be presumed that Citrix wanted to walk away from the joint venture and funding commitment made to Plaintiff and Citrix and used the termination as a mechanism to achieve that.

**D.  Citrix blocks Severance pay**

COMPLAINT
KHALID v CITRIX
Page 18 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**2.66**  On October 3, 2011, Citrix offered Plaintiff a Severance Agreement. Citrix made that agreement effective immediately from Citrix side and terminated Plaintiff per Section 1 of the agreement without showing any reason for termination rather than saying mutual.

**2.67**  It is common practice at Citrix that Citrix offer a severance package if Citrix terminates the employee at no fault. The amount is based on his service years at Citrix.

**2.68**  Plaintiff's Severance Agreement included eleven (11) weeks of wage equivalent to $30,757,  and a two (2) month payment equivalent to approximately $2800 for health care benefits for COBRA.

**2.69**  Plaintiff had four (4) weeks of Paid Time Off (PTO) balance. Of Plaintiff's four (4) weeks of PTO balance, Citrix paid only two (2) of those weeks. Citrix didn't pay two (2) weeks, which totaled approximately $5,592. Additionally, Citrix terminated Plaintiff at a time just a few weeks before his planned earned vacation. Citrix action deprived Plaintiff unfairly from earned benefits Plaintiff was entitled to.

**2.70**  Plaintiff lost this job, his wife didn't have job, and there were/are three young children at home. In that dire situation, to save his family, health insurance, and continue his start-up dream, and under the above duress, on October 21, 2011, Plaintiff signed the Severance Agreement even though it was highly skewed towards Citrix.

**2.71**  On October 25, 2011, Citrix blocked the severance payment on the basis that Plaintiff didn't return some patent asset (that was Plaintiff start-up property) to Citrix.

COMPLAINT
KHALID v CITRIX
Page 19 of 28

**ATM SHAFIQUL KHALID**
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

E. **Citrix claims Khalid start-up patents**

2.72   In March and April, 2012 Citrix asked Plaintiff to sign two additional

agreements; a) PATENT ASSIGNMENT AGREEMENT – This would have

assigned Plaintiff's four (4) Xencare security patents to Citrix, and b) Non-Exclusive

License Agreement – this would have given Citrix royalty free access to four (4)

Pcxen Systems home cloud patents. Plaintiff refused to sign them because Citrix

demand was unreasonable, unfair and illegal.

2.73   The Non-Exclusive License agreement listed four (4) patents

acknowledging Plaintiff as the rightful owner as "ATM Shafiqul Khalid is the owner of

U.S. Patent Application Nos. 12/951,081, 61/291,916, 61/26,411 and 61/527,583

("Licensed Patent Applications")." And

> "Khalid (on behalf of himself and his successors, and assigns) hereby grants
> to the Citrix a perpetual, irrevocable and non-terminable, non-exclusive,
> royalty-free, worldwide license under the Licensed Patent Applications to
> practice the inventions in the License Patent Applications anywhere in the
> world for any use. For the avoidance of doubt, this License Grant is intended
> to run with any patents that issue from the License Patent Applications and
> any assignment or partial assignment of patent rights by Khalid to any entity,
> including a partial successor or assign takes the Licensed Patent Applications
> and resulting patents subject to such License Grant"

2.74   The Patent Assignment Agreement Plaintiff refused to sign read:

> "I, ATM Shafiqul Khalid of Redmond, Washington (hereinafter
> "ASSIGNOR"), former employee of Citrix Systems, Inc. (hereinafter
> "ASSIGNEE") ....., do hereby unconditionally and irrevocably and
> absolutely assign, convey, sell, transfer, release, deliver and confirm unto
> ASSIGNEE ..., patent applications and patent publications listed in
> Schedule A" and Schedule A included "12/032,663 Safe and Secure

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

Program Execution Framework, 12/396,455 Safe and Secure Program Execution Framework with Guest Application Space, 61/033,017 Safe and Secure Program Execution Framework with Data and Program Files Protection 61/033,018 Safe and Secure Program Execution Framework with Guest Application Space."

2.75   Throughout 2012, Plaintiff tried to resolve the dispute with Citrix but failed. In an attempt to save thirteen (13) patent applications and many more in the pipeline Plaintiff created through his start-up, Plaintiff offered Citrix to temporarily transfer all Plaintiff's start-up patents to Citrix with non-perpetual revocable agreement. Citrix could prosecute those patents while disputes were being resolved. Citrix declined that offer.

2.76   In 2011 and 2012, Citrix also asked Plaintiff to transfer xencare.com and pcxen.com to Citrix and stop using them per Citrix Employee Agreement. Plaintiff purchased those domains on the behalf of his start-up and had been building the brand for years; Citrix never complained. Citrix applied for Xen trademark under network security classification on February 21, 2012; this was four years after xencare.com was launched and sold its product in the area of computer security. To avoid immediate dispute, Plaintiff stopped selling any Xencare products and took off any Xencare advertisement.

2.77   By 2012, Plaintiff and his start-up filed six (6) patent applications for Xencare and another seven (7) applications for Pcxen and others.

2.78   Due to Citrix unfair anti-competitive practice, Plaintiff was unable to raise funding to prosecute and manage all those patent applications and build business around it.

COMPLAINT
KHALID v CITRIX
Page 21 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.79   Plaintiff and his start-up team had planned to file sixteen (16) more patent applications with improvements and continuation work and file a similar number of patent applications outside the USA to cover international markets. However, Plaintiff failed to finish his work due to Citrix interference and was able to save only two (2) patents.

2.80   In May of 2011, Citrix bought a start-up company name Kaviza, reportedly for around $25 million. Kaviza developed Virtual Desktop solution for small business without terminal component. Discovery is needed to find out if Citrix killed Plaintiff's start-up to avoid competitive threat in the future. Citrix tried to avoid the competitive threat by applying an unlawful contract.

## F. Plaintiff's start-up investors backed out with Citrix interference

2.81   In 2011 and 2012, after leaving Citrix, Plaintiff started a fresh round of discussions with a few people to raise some funds to continue his start-up. Plaintiff told his investors about his start-up patents and told them there would be at least two (2) issued patents. Those investors wanted to invest $500,000.

2.82   One CEO from a Texas Software company wanted to invest and rebrand/resell some Xencare security product through his existing company. The combined deal was above one million USD.

2.83   When Citrix made unfair ownership claim to Xencare patents, those investors were nervous and eventually walked away.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

2.84   Those investors also saw Citrix's claim as unfair practice because Citrix never invested in Xencare and Pcexen but wanted to own Xencare patents and wanted royalty free access to Pcxen patents.

2.85   Citrix's action blocked Plaintiff's efforts to raise funding for his start-up because investors were fearful about a potential lawsuit with Citrix. With no severance money disbursement from Citrix, while not being able to raise money for start-up, and with a potential legal dispute with Citrix, it was impossible for Plaintiff to continue on his start-up and prosecute patent applications.  As a result, many patent applications started expiring beginning in the summer of 2012; Xencare and Pcxen start-up efforts died. As a result Plaintiff suffered prolonged depression impacting his family and professional life. Plaintiff's doctor advised/directed him to avoid stressful work during those time.

2.86   Plaintiff has been trying to resolve the issue with Citrix for the last few years and asked Citrix to go through arbitration; Citrix declined.

G. **Damages**

2.87   The plaintiffs suffered damages proximately caused by the actions of the defendant as set forth below.

## III.    CAUSES OF ACTION

3.1 Plaintiff repeats and realleges the facts set forth in paragraphs 2.1-2.87 above and incorporates the same by reference.

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

**CAUSE OF ACTION 1: Declaratory judgment; Citrix Disclosure and Assignment of Invention section in Employee Agreement is unenforceable.**

3.2 Citrix Employee Agreement contains "Disclosure and Assignment of Invention" section; the section is overbroad and in violation of RCW 49.44.140(1) and RCW 49.44.140(3) and hence unlawful and unenforceable.

3.3 Any section in the Employee Agreement that restricts the benefit of RCW 49.44.140 is unenforceable.

**CAUSE OF ACTION 2: Declaratory judgment; Citrix doesn't have right to Plaintiff's start-up patent.**

3.4     Citrix has no ownership right to US patent no. 8,286,219.

3.5     Citrix has no royalty free or other right to US patent no. 8,782,637.

3.6     Citrix does not have any ownership or royalty free right to any other patent application filed by Plaintiff's start-up team.

**CAUSE OF ACTIONT 3: Citrix Caused personal injury and unlawful interference to Plaintiff's start-up business.**

3.7 Citrix continuous refusal to release severance money, and unlawful interference caused enormous damage to Plaintiff's start-up company.

3.8 Citrix caused tort, personal injury and emotional distress through its action.

**CAUSE OF ACTION 4: Citrix Violated Washington Consumer Protection ACT under RCW 19.86.**

COMPLAINT
KHALID v CITRIX
Page 24 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

3.9 Citrix claimed ownership and royalty free access to patents Citrix never invested in. Citrix actions were anti-competitive and unlawful in violation of Washington public policy under RCW 19.86.

3.10    Citrix asked Plaintiff to assign patents that were owned by Plaintiff's start-up company. Citrix action was unfair and restraint of commerce.

3.11    Plaintiff could not commercialize Plaintiff's patents because Citrix interference didn't allow Plaintiff to raise funds.

3.12    Citrix Employee contract is in violation of RCW 49.44.140. Violation of Washington public policy is unfair and also a violation of RCW 19.86.20.

3.13    Citrix blocked progress of Plaintiff's start-up company using unlawful contracts to avoid any future competition.

**CAUSE OF ACTION 5: Breach of implied Duty of Good Faith and Fair Dealing**

3.14    Citrix had a duty of good faith and fair dealings under the Employee Contract. Citrix claimed Plaintiff's start-up patent and refused to find a solution through arbitration or by means that could have been affordable to Plaintiff. Citrix ignored many proofs Plaintiff provided to Citrix in an attempt to resolve this dispute.

3.15    Citrix retaliated against Plaintiff by terminating him when Plaintiff made some product complaint on good faith. This is violation of Citrix No-retaliation Policy written in "Citrix Code of Business Conduct".

3.16    Citrix agreed to form a joint venture on Plaintiff start-up work. Under the agreement Plaintiff would make initial investment in the form of time and capital, then

COMPLAINT
KHALID v CITRIX
Page 25 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

Citrix would invest $400,000 through Citrix start-up accelerator and take equity in the joint venture. Citrix didn't invest any capital, instead Citrix claimed free license to all the patents Plaintiff created.

**CAUSE OF ACTION 6**: **Wrongful Termination in Retaliation**

       3.17     Citrix retaliated against Plaintiff by terminating him when Plaintiff made some product complain on good faith. This is a violation of Citrix No-retaliation Policy written in "Citrix Code of Business Conduct".

       3.18     Citrix retaliated to break off from joint venture agreement.

**CAUSE OF ACTION 7**: **Breach of Employee Contract.**

       3.19     Citrix is in breach of Employee Agreement by enforcing an assignment section that is unlawful in Washington State.

       3.20     Citrix did not comply with the patent exclusion list in Exhibit-B under Section 5 and 7 of Employee Agreement.

**CAUSE OF ACTION 8**: **Tortious Interference with Contract or Business Expectancy.**

       3.21     Citrix refusal to release severance money, refusal to release its patent claim impacted Plaintiff's efforts to build his start-up business. Citrix knew Plaintiff was working to sign some investment contracts with his investors. Citrix action constituted continuous tortious interference with contract and business expectancy.

COMPLAINT
KHALID v CITRIX
Page 26 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA 98052
(425) 445-7157

**CAUSE OF ACTION 9: Citrix is in Breach of Promise of Severance.**

3.22      Citrix has established a practice to offer severance to employees if termination is not at employee fault. Citrix made a written promise to Plaintiff to offer severance, but never paid.

**CAUSE OF ACTION 10: Breach of Joint Venture Agreement.**

3.23      Multiple discussions between Citrix and Plaintiff formed a joint venture on specific terms. Under the terms, Plaintiff would invest his own money and time to build prototype, then Defendant would invest $400,000 for equity. Plaintiff invested approximately two (2) years of his own time and thousands of dollars. Citrix broke its promise to fund the joint venture. Citrix claimed royalty free access to all patents Plaintiff created. Citrix action destroyed business expectancy of the joint venture..

**CAUSE OF ACTION 11:   Reservation of Right to Assert Additional Causes of Action**

3.22      Plaintiff reserves the right to petition the court for permission to assert additional causes of action against the Defendant as discovery progresses.

## IV.      PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

4.1      Damages for back pay, front pay, lost benefits, in an amount to be proved at trial;

COMPLAINT
KHALID v CITRIX
Page 27 of 28

ATM SHAFIQUL KHALID
17446 NE 28th St.
Redmond, WA  98052
(425) 445-7157

4.2   Damages for loss of patents and damages for loss of profit in business in an amount to be proved at trial;

4.3   Damages for emotional distress, loss of enjoyment of life, humiliation, personal indignity, embarrassment, fear, anxiety, and/or anguish;

4.4   Damages to startup company in an amount to be proved at trial.

4.5   Injunctive relief and declaratory judgment in Plaintiff's favor;

4.6   Prejudgment interest in an amount to be proved at trial;

4.7   Double Damage under RCW 49.52.070 for violation of RCW 49.48.010;

4.8   Compensation for the tax penalty associated with any recovery;

4.9   Costs and legal fees pursuant to RCW 59.18, RCW 49.48.030 and RCW 4.84 or other rule of law or equity.

4.10   Treble damages under RCW 19.86.090 and civil Penalty under RCW 19.86.140; and

4.11   Whatever further and additional relief the court shall deem just and equitable.

## V.   DEMAND FOR JURY

5.1   Plaintiff hereby demands that this case be tried before a jury of twelve.

SIGNED and DATED this _2_ day of October, 2015.

ATM Shafiqul Khalid
Plaintiff

COMPLAINT
KHALID v CITRIX
Page 28 of 28

ATM SHAFIQUL KHALID
17446 NE 28ᵗʰ St.
Redmond, WA 98052
(425) 445-7157